UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
SANDRA DORRELL and PHILLIP A.                      :
WILKINSON, individually and on behalf of           :
a class of all others similarly situated,          :
:
:    Civil Action No. 3:16-cv-01152-N
*Plaintiffs*,                   :    Hon. David C. Godbey
:
- against -                   :    **ORAL ARGUMENT**
:    **REQUESTED**
PROSKAUER ROSE, LLP, and                           :
THOMAS V. SJOBLOM,                                 :
:
*Defendants*.                 :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

**DEFENDANT PROSKAUER ROSE LLP'S MOTION TO DISMISS
AND BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' ORIGINAL COMPLAINT**

---

Neil R. Burger                          James P. Rouhandeh*
Bruce W. Collins                        Daniel J. Schwartz*
CARRINGTON, COLEMAN, SLOMAN             Jonathan K. Chang*
   & BLUMENTHAL, L.L.P.            DAVIS POLK & WARDWELL LLP
901 Main Street, Suite 5500             450 Lexington Avenue
Dallas, Texas 75202                     New York, New York 10017
Telephone:  (214) 855-3000              Telephone:  (212) 450-4000
Facsimile:  (214) 855-1333              Facsimile:  (212) 701-5800
E-mail:  nburger@ccsb.com               E-mail:  rouhandeh@davispolk.com
                                 * admitted *pro hac vice*

# TABLE OF CONTENTS

P<small>AGE</small>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................ 4

LEGAL STANDARD ..................................................................................................... 8

ARGUMENT ................................................................................................................. 8

POINT I. ATTORNEY IMMUNITY BARS THIS LAWSUIT BECAUSE PLAINTIFFS ARE NON-CLIENTS SEEKING RECOVERY FOR ACTS SJOBLOM PERFORMED AS AN ATTORNEY REPRESENTING HIS CLIENT ................ 9

 A. Attorney Immunity Is Not Limited to the "Litigation Context," but, Even if It Were, Proskauer Would Be Immune from Plaintiffs' Suit ............................ 11

 B. There Is No "Crime Exception" to Attorney Immunity ......................................... 16

 C. There Is No "TSA Exception" to Attorney Immunity ........................................... 17

POINT II. THE COMPLAINT IS TIME-BARRED ................................................................ 18

 A. Plaintiffs' Claims Are Untimely Because Plaintiffs Knew or Should Have Known of Their Claims Well Over Four Years Ago ................................... 18

 B. The <u>Troice</u> Action Did Not and Could Not Toll the Statutes of Limitation ......................................................................................................... 20

 C. Plaintiffs Cannot File Successive Class Actions ................................................... 21

POINT III. PLAINTIFFS' TSA CLAIMS ARE BARRED BY THE STATUTES OF REPOSE ................................................................................................................ 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

PAGE

CASES

Alpert v. Crain, Caton & James, P.C.,
    178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)....................................... 12

Am. Pipe & Constr. v. Utah,
    414 U.S. 538 (1974) ............................................................................................................ 20

Baptist Mem'l Hosp. Sys. v. Sampson,
    969 S.W.2d 945 (Tex. 1998)................................................................................................ 10

Beavers v. Metro. Life Ins. Co.,
    No. G-07-00260, 2007 WL 3342540 (S.D. Tex. Nov. 8, 2007), aff'd,
    566 F.3d 436 (5th Cir. 2009) .............................................................................................. 22

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)........................................................................................................ 8, 19

Bell v. Showa Denko K.K.,
    899 S.W.2d 749 (Tex. App.—Amarillo 1995, writ denied) ..................................................... 20

Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.,
    No. 5:14-CV-862-DAE, 2015 WL 363196 (W.D. Tex. Jan. 27, 2015)..................................... 15

Buck v. Blum,
    130 S.W.3d 285 (Tex. App.—Houston [14th Dist.] 2004, no pet.).......................................... 10

Bush v. United States,
    823 F.2d 909 (5th Cir. 1987) .............................................................................................. 19

Cantey Hanger, LLP v. Byrd,
    467 S.W.3d 477 (Tex. 2015)......................................................................................... passim

Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.,
    878 F. Supp. 2d 1009 (C.D. Cal. 2011) ................................................................................ 21

Collin Cnty. v. Johnson,
    No. 05-99-00034-CV, 1999 WL 994039 (Tex. App.—Dallas Nov. 3, 1999, no pet.)................ 15

Collins v. Morgan Stanley Dean Witter,
    224 F.3d 496 (5th Cir. 2000) ................................................................................................ 8

Dibrell v. Gosset,
  No. 2:16-CV-0028, 2016 WL 2770536 (N.D. Tex. May 12, 2016) ........................................... 8

Dickson v. Am. Airlines,
  685 F. Supp. 2d 623 (N.D. Tex. 2010) .................................................................... 23

Dimitric v. Tex. Workforce Comm'n,
  No. G-07-247, 2009 WL 674391 (S.D. Tex. Mar. 13, 2009) .................................................. 12

Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.,
  No. 01-06-00696-CV, 2008 WL 746548
  (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) ....................................... 12, 13, 14

Elmakiss v. Hughes,
  No. 12-09-00269-CV, 2010 WL 2982922
  (Tex. App.—Tyler July 30, 2010, pet. denied) ......................................................... 14

In re Enron Corp. Sec.,
  465 F. Supp. 2d 687 (S.D. Tex. 2006) .................................................................... 21

Forde v. Waterman S.S. Corp.,
  No. 12-CV-3396, 2013 WL 5309453 (S.D.N.Y. Sept. 18, 2013)............................................ 23

Gaia Envtl., Inc. v. Galbraith,
  451 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ................................... 15

In re Greyhound Sec. Litig.,
  No. CIV. A. 3:95-CV-2103, 1997 WL 531317 (N.D. Tex. Aug. 15, 1997)............................. 23

Hensgens v. Deere & Co.,
  869 F.2d 879 (5th Cir. 1989) ............................................................................. 20

Highland Capital Management, LP v. Looper Reed & McGraw, P.C.,
  No. 05-15-00055-CV, 2016 WL 164528
  (Tex. App.—Dallas Jan. 14, 2016, pet. denied)........................................... 13, 15, 17

Holubec v. Brandenberger,
  111 S.W.3d 32 (Tex. 2003) ............................................................................... 25

Iqbal v. Bank of Am., N.A.,
  559 F. App'x 363 (5th Cir. 2014) ....................................................................... 11

Janvey v. Adams,
  588 F.3d 831 (5th Cir. 2009) ............................................................................... 5

Lewis v. Am. Exploration Co.,
   4 F. Supp. 2d 673 (S.D. Tex. 1998) ........................................................ 15

Lovelace v. Software Spectrum Inc.,
   78 F.3d 1015 (5th Cir. 1996) ............................................................... 7, 8

Maynard v. Caballero,
   752 S.W.2d 719 (Tex. App.—El Paso 1988, writ denied) ....................... 15

Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin,
   307 S.W.3d 283 (Tex. 2010) ................................................................. 25

Mitchell v. Chapman,
   10 S.W.3d 810 (Tex. App.—Dallas 2000, pet. denied) ........................... 15

Moore v. Lynaugh,
   No. 99- 20547, 2000 WL 1672670 (5th Cir. Oct. 12, 2000) ................... 22

Newby v. Enron Corp.,
   542 F.3d 463 (5th Cir. 2008) ........................................................... 20, 21

Odle v. Wal-Mart Stores Inc.,
   No. 3:11-cv-2954, 2012 WL 5292957 (N.D. Tex. Oct. 15, 2012),
   rev'd on other grounds, 747 F.3d 315 (5th Cir. 2014) .......................... 22

OSIC v. Greenberg Traurig, LLP,
   Civil Action No. 3:12-CV-04641-N (N.D. Tex. Feb. 4, 2015) ................ 24

Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.,
   721 F.3d 95 (2d Cir. 2013) .................................................................... 25

Robinson v. Crown Cork & Seal Co.,
   335 S.W.3d 126 (Tex. 2010) ................................................................. 18

S.V. v. R.V.,
   933 S.W.2d 1 (Tex. 1996) ..................................................................... 18

Sacks v. Hall,
   No. 01-13-00531-CV, 2014 WL 6602460
   (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) ................... 15, 17

Sacks v. Zimmerman,
   401 S.W.3d 336 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ... 14

Salazar-Calderon v. Presidio Valley Farmers Ass'n,
   765 F.2d 1334 (5th Cir. 1985) .................................................................. 3, 21, 22, 23

Smith v. Texaco, Inc.,
   281 F.3d 477 (5th Cir. 2002) ...................................................................... 23

Stein v. Regions Morgan Keegan Select High Income Fund, Inc.,
   --- F.3d ----, 2016 WL 2909333 (6th Cir. May 19, 2016)...................................... 25

Troice v. Proskauer Rose LLP,
   Civil Action No. 3:09-CV-1600-N, 2015 WL 1219522 (N.D. Tex. Mar. 4, 2015),
   rev'd on other grounds, 816 F.3d 341 (5th Cir. 2016).......................................... 9, 24

Troice v. Proskauer Rose, L.L.P.,
   816 F.3d 341 (5th Cir. 2016) .......................................................................... passim

Val-Com Acquisitions Trust v. Wells Fargo Bank, N.A.,
   No. 3:10-CV-1331-L, 2011 WL 2517230 (N.D. Tex. June 23, 2011) ....................... 19

Vaught v. Showa Denko K.K.,
   107 F.3d 1137 (5th Cir. 1997) ...................................................................... 20, 21

Woolley v. Clifford Chance Rogers & Wells, L.L.P.,
   No. CIV.A. 3:01-CV-2185, 2004 WL 57215 (N.D. Tex. Jan. 5, 2004) ................... 18

STATUTES & RULES

15 U.S.C. § 77s(c)................................................................................... 13

15 U.S.C. § 78u..................................................................................... 13

Fed. R. Civ. P. 12(b)(6)............................................................................ 1

Tex. Civ. Prac. & Rem. Code § 16.003 ....................................................... 19

Tex. Civ. Prac. & Rem. Code § 16.004 ....................................................... 19

Tex. Rev. Civ. Stat. Ann. art. 571-33F ....................................................... 24

Tex. Rev. Civ. Stat. Ann. art. 581-33H....................................................... 19

Defendant Proskauer Rose LLP ("Proskauer") moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Original Complaint (the "complaint") for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

This case improperly asserts the same claims that the Fifth Circuit dismissed with prejudice in Troice v. Proskauer Rose, L.L.P., 816 F.3d 341 (5th Cir. 2016). Plaintiffs should not be permitted a "do-over." Troice is binding precedent that mandates dismissal here. Moreover, plaintiffs' claims are untimely as they should have been (and, in fact, were) asserted almost seven years ago. For these reasons, the complaint must be dismissed with prejudice.

In this case, the *same* plaintiffs' lawyers assert the *same* claims, on behalf of the *same* putative class, based on the *same* allegations, and against the *same* defendants as in Troice. But nothing has changed since the Fifth Circuit dismissed those claims in Troice based on the attorney immunity doctrine. Troice applied the Texas Supreme Court's decision in Cantey Hanger, LLP v. Byrd, which holds that attorneys are immune from suits by non-clients for "conduct within the scope of [their] representation of" a client. 467 S.W.3d 477, 479 (Tex. 2015). Here, as in Troice, plaintiffs—purchasers of certificates of deposit ("CDs") from Stanford International Bank ("SIBL")—were never clients of defendant Proskauer and its former partner, defendant Thomas V. Sjoblom. Their claims, as in Troice, are based on attorney conduct—making legal arguments, responding to document requests and defending depositions—that they allege occurred "within the course and scope of [Sjoblom's] employment with Proskauer, and in furtherance of said law firm's business" (Compl. ¶ 240); namely, its representation of Stanford Financial Group ("Stanford Financial") in an adversarial investigation by the U.S. Securities and Exchange Commission (the "SEC"). Although plaintiffs claim—contrary to reality—that Sjoblom conspired with Stanford

Financial to obstruct that investigation, Proskauer is nevertheless immune from plaintiffs' suit under <u>Troice</u> and <u>Cantey Hanger</u>.

As plaintiffs acknowledge in paragraph 1 of their complaint, they seek to evade the holding of <u>Troice</u> by relitigating the existence of three so-called "exceptions" to the attorney immunity doctrine that their lawyers did not raise, and therefore waived, in <u>Troice</u>.  These purported "exceptions" do not exist and have never been recognized by ***any*** court in ***any*** jurisdiction.  Moreover, they conflict with the rationales on which <u>Troice</u> and <u>Cantey Hanger</u> were decided.  <u>First</u>, plaintiffs' assertion that attorney immunity does not apply because Sjoblom's conduct occurred outside the "litigation context" is baseless.  Texas courts—including the Supreme Court in <u>Cantey Hanger</u>—have consistently applied attorney immunity regardless of whether a formal litigation is pending.  There is no dispute that the acts Sjoblom performed in defense of Stanford Financial were the very acts that attorneys perform in litigation, and were undertaken in an adversarial investigation that actually led to the filing of an in-court litigation against Sjoblom's client.  These facts—which are apparent on the face of plaintiffs' complaint—belie plaintiffs' contention that the so-called "litigation context" exception has any applicability here.  <u>Second</u>, plaintiffs' claim that a so-called "crime exception" to attorney immunity exists is plainly inconsistent with Texas law, which holds that attorney immunity applies to ***any*** wrongful conduct, however it is labeled, so long as that conduct was part of the discharge of the lawyer's duties in representing his or her client.  <u>Third</u>, plaintiffs' contention that attorney immunity does not apply to claims under the Texas Securities Act (the "TSA") because the TSA is designed to protect investors from fraud is not only contrary to common sense, but inconsistent with <u>Cantey Hanger</u>'s express rejection of a "fraud exception" to attorney immunity, as well as the Fifth Circuit's ruling that

attorney immunity "immunize[s] conduct" and bars non-clients' claims "full stop." Troice, 816 F.3d at 346, 349.

Although Proskauer's clear entitlement to immunity is enough to dismiss the complaint with prejudice, plaintiffs' complaint fails for two additional reasons:  all of the claims asserted are untimely and this case cannot be maintained as a class action.  Plaintiffs cannot avoid these fatal bars to their claims.  Indeed, their allegation that their deadline to file this case was tolled under the discovery rule cannot be reconciled with the reality that numerous plaintiffs represented by the same counsel—*including one of the named plaintiffs in this case*—asserted the same claims against Proskauer well before that deadline expired.  Plaintiffs' allegation that the Troice case tolled their deadline to sue is equally unavailing because, as the Fifth Circuit has made clear in interpreting Texas law, class action tolling applies only to class actions filed in Texas *state* court.  Moreover, even if Troice had some tolling effect (which it did not), such tolling would apply only to the named plaintiffs and would *not* save untimely claims asserted on behalf of the putative class because the Fifth Circuit strictly prohibits plaintiffs from "piggyback[ing] one class action onto another." Salazar-Calderon v. Presidio Valley Farmers Ass'n, 765 F.2d 1334, 1351 (5th Cir. 1985).  Nor would tolling save plaintiffs' TSA claims, which were barred years ago by the TSA's statutes of repose.

In short, plaintiffs' complaint is barred on numerous grounds.  Proskauer should not be exposed—yet again—to the same baseless class claims dismissed in Troice simply because plaintiffs' counsel waived meritless legal arguments.  Concluding otherwise here would unfairly expose Proskauer to vexatious and repetitive litigation so long as one member of a putative class (or counsel) is willing to pay the filing fee and able to propose a new baseless legal theory.  For the reasons explained more fully below, this case—like Troice—should be dismissed in its entirety and with prejudice.

## BACKGROUND

Proskauer is an international law firm.  (Compl. ¶ 7.)  From 2006 to 2009, Sjoblom was a

partner at Proskauer.  (Id. ¶¶ 8, 240.)  In June 2005, Stanford Financial allegedly retained

Sjoblom and his prior law firm—Chadbourne & Parke LLP ("Chadbourne")—to represent it in

connection with an SEC investigation.  (Id. ¶ 85.)  Sjoblom continued to represent Stanford

Financial when he left Chadbourne and joined Proskauer in the summer of 2006, "provid[ing]

legal services" to Stanford Financial that were "within the course and scope of his employment

with Proskauer" through February 2009, when Proskauer and Sjoblom withdrew from that

representation.  (Id. ¶¶ 10, 207, 240.)

Plaintiffs are investors who allegedly held CDs or "other investment accounts" with SIBL

as of February 2009.  (Id. ¶ 6.)  On behalf of a putative worldwide class of thousands of

purchasers of CDs, plaintiffs assert claims against Proskauer for (i) aiding and abetting Stanford

Financial's alleged violations of the registration and anti-fraud provisions of the TSA (id. ¶¶ 222-

31); (ii) aiding and abetting breaches of fiduciary duty (id. ¶¶ 232-34); (iii) aiding and abetting

Stanford Financial's alleged common law fraud (id. ¶ 235); and (iv) allegedly conspiring with

Stanford Financial to defraud the putative class (id. ¶¶ 236-39).[1]  The complaint alleges that

Proskauer is liable on a respondeat superior theory for Sjoblom's conduct.  (Id. ¶ 240.)  With the

exception of the claim for aiding and abetting breaches of fiduciary duty, these are the same

claims alleged in Troice, in which plaintiffs' counsel represented another putative class of

investors and which the Fifth Circuit recently held was barred by attorney immunity.  Plaintiffs

---

[1] The Receiver of the Stanford Receivership Estate, who stands in the shoes of Proskauer's former client Stanford Financial, is not a member of the putative class and is not otherwise a party to this litigation.  The Receiver has, however, brought a separate action against Proskauer in which he is asserting a professional negligence claim based on the same allegations in plaintiffs' complaint.  (See Pls.' Original Compl., Janvey v. Proskauer Rose, LLP, No. 3:13-CV-00477-M (N.D. Tex. Jan. 31, 2013), ECF No. 1.)

have made clear that the sole purpose of this lawsuit is to raise legal arguments that were waived by their counsel in Troice.  (Id. ¶ 1.)

As this Court is aware, Stanford Financial and SIBL were two of the vehicles used by R. Allen Stanford and his associates to carry out a Ponzi scheme through which they purportedly induced plaintiffs and other investors to purchase or hold allegedly valueless CDs.  See, e.g., Janvey v. Adams, 588 F.3d 831, 833 (5th Cir. 2009).  Although Stanford is not a defendant in this action, the complaint is almost entirely devoted to cataloguing his wrongdoing.  (See, e.g., Compl. ¶¶ 23-43, 52-57.)

In contrast to the allegations of Stanford's misconduct, plaintiffs offer few factual allegations regarding Proskauer and Sjoblom.  Plaintiffs' lawsuit is based on the theory that Sjoblom conspired with Stanford to thwart regulatory investigations of Stanford Financial, including the SEC's formal investigation of Stanford Financial.  (E.g., id. ¶¶ 10, 91.)  The complaint identifies four types of acts that Sjoblom allegedly performed over a four-year period (while acting as counsel to Stanford Financial and its related entities) that supposedly obstructed those investigations.  (Id. ¶ 122.)

First, plaintiffs allege that in October 2005, Sjoblom (while at Chadbourne, not Proskauer) sent a letter to the SEC in which he "argued that the [SEC] lacked jurisdiction over SIBL's CD program because the CDs did not constitute 'securities' under U.S. law."  (Id. ¶ 111.)  Plaintiffs allege that at the time Sjoblom sent that letter, he "had no reasonable basis to assert that SIBL's CDs were not securities under U.S. law."  (Id. ¶ 112.)[2]

Second, plaintiffs allege that in the fall of 2006, Sjoblom advised Stanford Financial to withhold from production documents that were "crucial to the SEC's concerns."  (Id. ¶¶ 138-47.)

---

[2] This allegation, of course, has no application to Proskauer, as it predates Sjoblom joining Proskauer in 2006.

Plaintiffs also allege that in connection with the same document requests, Sjoblom attempted to mislead the SEC and delay its investigation by telling the SEC that "he 'heard through the grapevine'" that the SEC had not provided Antigua's banking regulator with a proper document request concerning SIBL; that the SEC had no jurisdiction over SIBL; that the SEC "would have to 'go to Antigua' to get SIBL's information directly" from Antigua's regulator, the Financial Services Regulatory Commission; and that SIBL was an "incredible institution." (Id. ¶¶ 126-27.)

Third, plaintiffs allege that in January 2009, Sjoblom made certain statements to SEC Enforcement Division lawyers in the course of scheduling depositions for Stanford (Stanford Financial's chief executive officer), James Davis (Stanford Financial's chief financial officer), and Laura Pendergest-Holt (Stanford Financial's chief investment officer), all of whom the SEC had subpoenaed to testify about SIBL's investment portfolio. (Id. ¶¶ 181-84.) Specifically, plaintiffs allege that Sjoblom told SEC attorneys that Pendergest-Holt and Juan Rodriguez Tolentino (SIBL's president) were "'better people [than Stanford and Davis] to explain the details' about SIBL's entire portfolio" because "Stanford and Davis did not 'micro-manage' [the] portfolio." (Id. ¶ 182 (emphasis omitted).) According to the complaint, Sjoblom's statements were untrue because Sjoblom knew that Stanford and Davis "had the most knowledge about the assets in" SIBL's Tier III portfolio. (Id. ¶ 181.) Plaintiffs also allege that in the course of discussing the depositions, Sjoblom falsely represented to the SEC that SIBL was "not a criminal enterprise," and that "all assets are there." (Id. ¶ 182.)

Fourth, plaintiffs allege that Sjoblom represented Pendergest-Holt in her capacity as an executive of Stanford Financial during her sworn SEC testimony on February 10, 2009. (Id. ¶ 205.) During that testimony, Sjoblom allegedly failed to correct Pendergest-Holt's "lies" regarding her preparation for testimony and her knowledge of the Tier III assets. Plaintiffs also

allege that Sjoblom "actively suborned Pendergest-Holt's perjury . . . by improperly narrowing [a] question" asked by the SEC Enforcement Division staff about whether anyone other than Sjoblom was present during her meetings to prepare for her testimony.  (Id.)  Plaintiffs allege that Sjoblom "steered [Pendergest-Holt] to answer 'no'" when he rephrased that question to "when we were preparing last night, was there a third person present?"  (Id. (emphasis omitted).)

According to the complaint, in the course of preparing Stanford Financial executives to make presentations to the SEC, Sjoblom learned on February 5, 2009 that the composition and performance of SIBL's investment portfolio had been misrepresented to investors.  (Id. ¶¶ 195-200.)  On February 11, 2009, less than one week after Sjoblom allegedly learned of Stanford's fraud, Sjoblom and Proskauer withdrew from representing Stanford Financial and disaffirmed all prior oral and written representations to the SEC.  (See Compl. ¶ 207.)[3]  These allegations from plaintiffs' own complaint underscore what Davis's sworn trial testimony (elicited by the government) has since confirmed:  The Ponzi scheme was concealed from Sjoblom until shortly before Proskauer and Sjoblom withdrew from representing Stanford and disaffirmed all prior representations to regulators.  (See App. at 120-21 [Rouhandeh Decl., Ex. 1 at 3259:8-3260:2] (testifying that prior to February 2009, Sjoblom and others had "been led to believe" that the assets in Tier III "were the same style[] and content of what was in Tier 2"); App. at 140 [Rouhandeh Decl., Ex. 1 at 3279:3-8] (testifying that Sjoblom and others did not know that Stanford Financial's assets "weren't worth what [Stanford and Davis] said they were . . . worth").)[4]

---

[3] The complaint incorrectly states the dates on which Sjoblom and Proskauer withdrew and disaffirmed all prior representations, but the precise dates are immaterial for purposes of this motion.

[4] This Court can take judicial notice of Davis's testimony.  See Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1017-18 (5th Cir. 1996).

**LEGAL STANDARD**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint's allegations can "nudge[] [the plaintiffs'] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The analysis is informed by the factual allegations in the complaint, which are accepted as true for purposes of the motion, as well as documents "attache[d] to a motion to dismiss . . . [that] are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000); Lovelace, 78 F.3d at 1017 (courts may consider "documents . . . incorporated in the complaint" on a motion to dismiss). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Dibrell v. Gosset, No. 2:16-CV-0028, 2016 WL 2770536, at *3 (N.D. Tex. May 12, 2016) (quotation marks omitted). Further, the Court may "consider matters of which [it] may take judicial notice." Lovelace, 78 F.3d at 1017-18.

**ARGUMENT**

The complaint should be dismissed in its entirety for two reasons. First, as the Fifth Circuit has already held, plaintiffs' claims are barred as a matter of law under Texas's attorney immunity doctrine. Second, plaintiffs' claims are untimely under Texas's statutes of limitation. In addition, plaintiffs' claims for aiding and abetting violations of the registration and anti-fraud provisions of the TSA fail for the independent reason that they are barred by the statutes of repose applicable to those claims.[5]

---

[5] As in Troice, plaintiffs' complaint is also defective insofar as it fails to plead that Proskauer and Sjoblom acted with the knowledge and intent required for civil conspiracy and aiding and abetting claims, and fails to plead proximate causation. Plaintiffs' claim for aiding and abetting violations of the TSA's registration provisions also fails because it is preempted by the National Securities Markets Improvement Act of 1996, and their claim for sales by an unregistered dealer is not cognizable because the complaint admits that the SIBL CDs were sold through registered dealers. (E.g., Compl. ¶¶ 15-16.) However,

## POINT I.

## ATTORNEY IMMUNITY BARS THIS LAWSUIT BECAUSE PLAINTIFFS ARE NON-CLIENTS SEEKING RECOVERY FOR ACTS SJOBLOM PERFORMED AS AN ATTORNEY REPRESENTING HIS CLIENT

As the Texas Supreme Court explained in Cantey Hanger, Texas's attorney immunity doctrine wholly bars non-clients from suing attorneys for "conduct . . . within the scope of [the attorney's] legal representation" of his or her client.  467 S.W.3d at 484; see id. at 485 (holding that defendant-attorney was entitled to attorney immunity because the "*type* of conduct alleged falls squarely within the scope of [the attorney's] representation of [its client]" (emphasis in original)).  As the Fifth Circuit recently held in Troice, this broad rule allows no exceptions:  Attorney immunity is a "true immunity from suit" that furthers Texas's policy objective of promoting "loyal, faithful, and aggressive representation by attorneys employed as advocates" by barring non-clients from suing attorneys for their conduct as lawyers "*full stop*." Troice, 816 F.3d at 346, 349 (emphasis added) (quotation marks and citations omitted).

There can be no doubt after Troice that the attorney immunity doctrine bars plaintiffs' claims in this case.  As in Troice, plaintiffs here allege that Proskauer is liable to them because Sjoblom improperly:

> sent a letter arguing, using legal authorities, that the SEC did not have jurisdiction; communicated with the SEC about its document requests and about Stanford Financial's credibility and legitimacy; stated that certain Stanford Financial executives would be more informative deponents than others; and represented a Stanford Financial executive during a deposition.

Id. at 348; see, e.g., Compl. ¶¶ 111-12, 138-47, 181-84, 205.  Because these acts "are classic examples of an attorney's conduct in representing his client"—and plaintiffs could not "credibly"

---

because this Court declined to dismiss the Troice complaint on these grounds, see Troice v. Proskauer Rose LLP, Civil Action No. 3:09-CV-1600-N, 2015 WL 1219522 (N.D. Tex. Mar. 4, 2015), Proskauer does not address them at any length herein, but asserts these grounds to preserve them for appeal.

claim otherwise—the Fifth Circuit held Proskauer immune from plaintiffs' suit.  <u>Troice</u>, 816

F.3d at 348.  The same is true here because, as in <u>Troice</u>, plaintiffs were never clients of

Proskauer's and seek to hold Proskauer liable for the *same conduct* undertaken by Sjoblom while

representing his client in the SEC's investigation of Stanford Financial.  <u>See id.</u> (explaining that

attorney immunity serves to "immunize *conduct*, not to protect attorneys only from certain

potential plaintiffs" (emphasis added)).

Notably, there are no allegations that Sjoblom took any action outside the scope of his

representation of Stanford Financial.  That is not surprising because plaintiffs seek to hold

Proskauer liable for Sjoblom's conduct solely on a respondeat superior theory.  (<u>See</u> Compl. ¶ 240

(alleging that Sjoblom acted "within the course and scope of his employment with Proskauer").)

Accordingly, any suggestion that Sjoblom's alleged acts were outside the scope of his role as an

attorney to Stanford Financial would not only contradict the complaint's allegations, but would

also mean that plaintiffs have no claim against Proskauer at all.  <u>See Baptist Mem'l Hosp. Sys. v.</u>

<u>Sampson</u>, 969 S.W.2d 945, 947 (Tex. 1998) ("Under the doctrine of respondeat superior, an

employer is vicariously liable for the [wrongful acts] of an agent or employee *acting within the*

*scope of his or her agency or employment* . . . ." (emphasis added)); <u>Buck v. Blum</u>, 130 S.W.3d

285, 289 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("A plaintiff may . . . plead herself out

of court if she alleges facts that negate her [respondeat superior] cause of action.").  Indeed,

plaintiffs recently stipulated with Sjoblom that any recovery against him in this case would be limited

to available insurance coverage, underscoring plaintiffs' need to allege—and prove—that Sjoblom

acted within the scope of his duties as a Proskauer partner, which clearly did not include joining a

conspiracy to defraud investors.  (<u>See</u> Mot. for Entry of Second Stipulation & Agreed Order

Extending Relief from Stay, <u>In re: Thomas Vincent Sjoblom</u>, No. 1:14-00329 (Bankr. D.D.C. May

27, 2016), ECF No. 90.)

Because Sjoblom (and, therefore, Proskauer) performed the complained-of conduct as an attorney serving as counsel to Stanford Financial, Proskauer is immune from plaintiffs' suit. Plaintiffs admit as much by alleging that their ability to pursue their claims depends on three supposed "exceptions" to the attorney immunity doctrine that were deemed to be waived by plaintiffs' counsel in Troice. (See Compl. ¶ 1.)  However, these purported exceptions have never been recognized by any court, and cannot be reconciled with binding legal authority.  They cannot save plaintiffs' claims.

**A.      Attorney Immunity Is Not Limited to the "Litigation Context," but, Even if It Were, Proskauer Would Be Immune from Plaintiffs' Suit**

Plaintiffs allege in their complaint that the attorney immunity doctrine is inapplicable because Sjoblom's conduct "was not undertaken in a litigation context."  (Id. ¶ 210.)  However, even if attorney immunity were limited to the "litigation context"—and there is no such limitation—Proskauer *still* would be immune because the conduct occurred during an adversarial SEC investigation that immediately preceded the filing of a lawsuit by the SEC.

Although they do not define the term "litigation" in their complaint, plaintiffs' suggestion that Sjoblom's conduct took place outside that "context" requires them to advance the same extreme position they ignored in this Court and pressed in the Fifth Circuit: that an adversarial proceeding does not qualify as "litigation" unless it is filed as a lawsuit in court.  That contention ignores that Sjoblom's representation of Stanford Financial was preliminary to, and actually did culminate in, an in-court litigation against Sjoblom's former client mere days after he withdrew and disaffirmed his prior representations.  (E.g., Compl. ¶ 6 & n.1 (referencing SEC v. Stanford Int'l Bank Ltd., et al., Civil Action No. 3-09-CV-0298N (N.D. Tex. Feb. 17, 2009)).)  In any event, plaintiffs' argument is "not in line with Texas law."  Iqbal v. Bank of Am., N.A., 559 F.

App'x 363, 365 (5th Cir. 2014) (rejecting the argument that attorney immunity is limited to litigation).

Indeed, for purposes of the attorney immunity doctrine, Texas courts define "litigation" not by whether the attorney's challenged conduct occurs in a courtroom or in the context of a filed lawsuit, but by whether the alleged conduct is of the kind performed by attorneys representing clients in a legal action or another "***adversarial process similar to litigation***."  <u>Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.</u>, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op.) (emphasis added); <u>see id.</u> (extending immunity to alleged wrongdoing in arbitration because "the conduct cited by appellants occurred in an adversarial context"); <u>Dimitric v. Tex. Workforce Comm'n</u>, No. G-07-247, 2009 WL 674391, at *9 (S.D. Tex. Mar. 13, 2009) (stating that conduct undertaken at a hearing before an administrative agency is "quintessentially" the type of conduct "protected by [attorney] immunity"); <u>Alpert v. Crain, Caton & James, P.C.</u>, 178 S.W.3d 398, 403-04, 407 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding attorney immunity precludes claims based on allegedly aiding client's "scandalous" representations to the IRS and other governmental entities).

Numerous Texas courts have applied the attorney immunity doctrine to conduct that took place outside of a courtroom, both before and after any actual lawsuit was pending.  In <u>Cantey Hanger</u> itself, for example, the challenged conduct did not occur in court or otherwise in a judicial proceeding.  Instead, the alleged wrongdoing was "falsif[ying] [a] bill of sale" transferring an aircraft "in order to shift tax liability for the [aircraft]" over a year ***after*** an underlying divorce proceeding had concluded.  476 S.W.3d at 479-80.  The Texas Supreme Court nevertheless determined that the "***type*** of conduct" undertaken by the defendant-attorney was entitled to

immunity because it fell "squarely within the scope of [the defendant-attorney's] representation of [the client] in the divorce proceedings." Id. at 485 (emphasis in original). Similarly, in Highland Capital Management, LP v. Looper Reed & McGraw, P.C., No. 05-15-00055-CV, 2016 WL 164528 (Tex. App.—Dallas Jan. 14, 2016, pet. denied), the Dallas Court of Appeals held that conduct undertaken on behalf of a client *prior* to the commencement of a lawsuit is protected by the attorney immunity doctrine. Id. at *6 n.3. As these and other decisions make clear, whatever limits there may be on attorney immunity, conduct that takes place "in the context of litigation or another adversarial proceeding" easily comes within the scope of the attorney immunity doctrine's protections. Dixon Fin. Servs., Ltd., 2008 WL 746548, at *9.

Here, there can be no question that an SEC investigation is an "adversarial proceeding" and involves "an adversarial process similar to litigation." Id. By the terms of the federal securities laws, an SEC investigation is adversarial by nature because the SEC has authority to conduct an investigation only when "it deems [one] necessary to determine whether any person has violated, is violating, or is about to violate any provision of" the federal securities laws and associated regulations, 15 U.S.C. § 78u(a), or when the SEC believes an investigation to be "necessary and proper for the enforcement of" the securities laws, id. § 77s(c). Thus, before the SEC even starts investigating, it must already have reason to believe that someone has violated or is about to violate the securities laws or associated regulations, and/or that it must take action to enforce those provisions. Moreover, as the SEC's governing statutes themselves expressly state, an SEC investigation has the status of a legal proceeding. See 15 U.S.C. § 78u(b) (delineating SEC's powers in "any such investigation, *or any other proceeding* under this chapter" (emphasis added)). Accordingly, any suggestion that Stanford Financial—the target of the SEC's investigation—was not in a position "adverse" to the SEC would defy common sense.

13

So, too, would any argument that the SEC's adversarial investigation of Stanford Financial was not "similar to litigation."  See Dixon Fin. Servs. Ltd., 2008 WL 746548, at *9 (noting that immunity extends to "an adversarial process similar to litigation").  The complaint alleges that before Sjoblom was retained, the SEC already believed that "Stanford was committing securities fraud."  (Compl. ¶¶ 82-84.)  And it was not just the SEC that appreciated the adversarial nature of the investigation—according to the complaint, Stanford Financial retained Sjoblom because Sjoblom had been an "enforcement lawyer for 20 years before joining Chadbourne."  (Id. ¶ 85.)  In other words, according to plaintiffs, Stanford Financial hired Sjoblom because he was an experienced SEC litigator who could defend the company as it embarked on possible litigation.  (See id. ¶ 122 (alleging that the Proskauer engagement letter contemplated litigation).)

Moreover, the SEC's investigation of Stanford Financial was not materially different from any other litigation.  Indeed, plaintiffs cannot claim that Sjoblom's acts in defense of Stanford Financial are any different from the kinds of acts that attorneys routinely perform "when zealously defending their clients" in a courtroom litigation.  See Sacks v. Zimmerman, 401 S.W.3d 336, 342 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).  Nor can they, in light of the Fifth Circuit's decision in Troice, contend that these kinds of acts are not entitled to immunity.  See Troice, 816 F.3d at 348 (holding that Sjoblom's conduct involved "classic examples of an attorney's conduct in representing his client").  Texas courts have consistently held that the very same kind of conduct in which Sjoblom allegedly engaged is entitled to immunity:

- **Advancing legal arguments and presenting evidence**.  See, e.g., Elmakiss v. Hughes, No. 12-09-00269-CV, 2010 WL 2982922, at *4 (Tex. App.—Tyler July 30, 2010, pet. denied) (mem. op.) (protecting as immune attorney's conduct in "advocating positions").[6]

---

[6] See also Bitterroot Holdings, LLC v. MTGLQ Investors, L.P., No. 5:14-CV-862-DAE, 2015 WL 363196, at *5-6 (W.D. Tex. Jan. 27, 2015) (granting attorney immunity for advancing a legal claim while "knowing that the claim was barred by the statute of limitations"); Collin Cnty. v. Johnson, No. 05-99-

- **Responding to discovery requests**.  See, e.g., Lewis v. Am. Exploration Co., 4 F. Supp. 2d 673, 675, 679-80 (S.D. Tex. 1998) (holding attorney immune for allegedly providing false responses to discovery requests and improperly withholding documents known to exist).[7]

- **Procuring or presenting witness testimony**.  See, e.g., id. (holding attorney immune for assisting client in providing false deposition testimony).[8]

Sjoblom engaged in these acts, which are at the root of plaintiffs' claims in this action, in response to the SEC's exercise of its power to issue subpoenas and take discovery—both hallmarks of pretrial litigation.  (See, e.g., Compl. ¶ 138.)  As the facts of this case illustrate, such acts are often precursors to in-court litigation:  The discovery that the SEC took in its formal investigation of Stanford Financial ultimately led to the filing of a lawsuit against Sjoblom's former client immediately after he withdrew from the representation and disaffirmed his prior representations to the SEC (see id. ¶ 6 & n.1 (referencing SEC v. Stanford Int'l Bank Ltd., et al., Civil Action No. 3-09-CV-0298N)), which, on its own, is grounds for according immunity here.  See Highland Capital, 2016 WL 164528, at *6 n.3.

Finally, while the Fifth Circuit had no occasion in Troice to rule directly on whether the attorney immunity doctrine is limited to the "litigation context" because plaintiffs' lawyers apparently saw no basis to argue it in this Court and thus waived that argument, Sjoblom's conduct

---

00034-CV, 1999 WL 994039, at *4 (Tex. App.—Dallas Nov. 3, 1999, no pet.) ("[Attorney] was entitled to advance his position on the subrogation issue without fear of personal liability.").

[7] See also Sacks v. Hall, No. 01-13-00531-CV, 2014 WL 6602460, at *13 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (mem. op.) ("The filing of [records obtained in discovery] . . . is conduct in which an attorney engages to discharge his duties to his client."); Mitchell v. Chapman, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied) (holding attorney immune for "willfully failing to produce the document").

[8] See also Gaia Envtl., Inc. v. Galbraith, 451 S.W.3d 398, 401, 410 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (holding that immunity applies where attorney allegedly "intended to coerce [a witness] to testify falsely"); Maynard v. Caballero, 752 S.W.2d 719, 720-21 (Tex. App.—El Paso 1988, writ denied) (finding attorney immune for intentionally limiting the testimony of an opposing witness).

at issue in this case is, of course, ***precisely the same conduct*** that the Fifth Circuit held in <u>Troice</u> to

be "classic examples of an attorney's conduct in representing his client" that entitled Proskauer to

immunity as a matter of law.  <u>Troice</u>, 816 F.3d at 348.  Plaintiffs' suggestion that they can

transform Sjoblom's conduct from "classic examples of an attorney's conduct" that is entitled to

immunity to unprotected conduct by mischaracterizing it—contrary to the facts and the law—as

falling outside the "litigation context" makes no sense.  Thus, as the Fifth Circuit's ruling in

<u>Troice</u> confirms, there is no basis to conclude that Sjoblom's defense of Stanford Financial was

not undertaken in a "litigation context" even though it did not take place in a courtroom or

during the pendency of the in-court lawsuit that immediately followed.

**B.     There Is No "Crime Exception"
        to Attorney Immunity**

Plaintiffs next try to escape <u>Troice</u> by alleging that attorney immunity is subject to a

"crime exception."  (Compl. ¶ 210.)  This argument directly contravenes the Texas Supreme

Court's ruling in <u>Cantey Hanger</u>, which itself involved allegations of criminal conduct.  As the

Texas Supreme Court held in <u>Cantey Hanger</u>, non-clients may not circumvent attorney immunity

by alleging that the attorney's acts were wrongful because the immunity analysis focuses "on the

kind—not the nature—of the attorney's conduct."  467 S.W.3d at 483.  Accordingly, even

"conduct that is wrongful in the context of the underlying suit is not actionable if it is part of the

discharge of the lawyer's duties in representing his or her client" and "fraud is not an exception" to

the doctrine.  <u>Id.</u> at 481, 483 (quotation marks omitted); <u>see</u> <u>id.</u> at 483 ("Merely labeling an

attorney's conduct 'fraudulent' does not and should not remove it from the scope of client

representation or render it foreign to the duties of an attorney." (quotation marks omitted)).  If

plaintiffs were correct that recasting their characterization of Sjoblom's conduct from fraudulent

(as was alleged in <u>Troice</u>) to criminal (as they now claim) was enough to negate attorney

immunity, <u>Cantey Hanger</u>'s ruling that wrongful conduct is entitled to immunity would be meaningless because non-clients could circumvent it by simply replacing the word "fraud" with the word "crime."  The attorney immunity doctrine would be an empty vessel.  The Texas Supreme Court surely did not intend that outcome.

In <u>Cantey Hanger</u> itself, the defendant-attorney was accused of "evad[ing] tax liability," which is a criminal act, and the Texas Supreme Court nevertheless held the defendant-attorney immune from suit.  <u>Cantey Hanger</u>, 467 S.W.3d at 480, 484; <u>see</u> Brief of Resp'ts, <u>Cantey Hanger, LLP v. Byrd</u>, No. 13-0861, 2014 WL 2707590, at *27 (Tex. June 9, 2014) (arguing that "shifting tax liability . . . to [those] who were not responsible for it criminally evad[es] State and Federal taxes").  Other Texas cases have likewise held attorneys immune for allegedly committing criminal acts in connection with representing a client.  <u>See</u> <u>Highland Capital</u>, 2016 WL 164528, at *6 & n.3 (applying immunity to alleged criminal misappropriation of documents); <u>Hall</u>, 2014 WL 6602460, at *14 (according immunity where the defendant-attorney was accused of criminally disclosing medical records during discovery).  Thus, plaintiffs' suit cannot be resuscitated merely by relabeling Sjoblom's conduct as "criminal" as opposed to merely "fraudulent."[9]

**C.      There Is No "TSA Exception"
        to Attorney Immunity**

Finally, plaintiffs allege that attorney immunity does not apply to TSA claims because the TSA is allegedly "designed to serve the public policy of protecting investors from fraud." (Compl. ¶ 210.)  That assertion is irrelevant.  Fraud claims serve the same purpose, and the Texas Supreme Court has already made clear that "[f]raud is not an exception to attorney

---

[9] "Fraud" is undoubtedly broad enough to cover both criminal and civil fraud, and, given the allegations of criminal misconduct alleged in <u>Cantey Hanger</u>, the Texas Supreme Court's repudiation of a "fraud exception" cannot be read to mean anything other than that there is likewise no "crime exception."

immunity." <u>Cantey Hanger</u>, 467 S.W.3d at 484.  In any event, plaintiffs' proposed exception is directly contrary to the Fifth Circuit's explanation in <u>Troice</u> that attorney immunity "immunize[s] ***conduct***" and bars non-clients' claims "***full stop***."  <u>Troice</u>, 816 F.3d at 349 (emphasis added).  Plaintiffs cannot circumvent that clear bar by asserting that claims under the TSA are somehow exempt.

* * * *

None of plaintiffs' purported exceptions to the attorney immunity doctrine, which their attorneys saw no need to timely raise in <u>Troice</u>, can overcome Proskauer's entitlement to immunity.  Plaintiffs' claims against Proskauer should be dismissed with prejudice for the same reasons the Fifth Circuit already dismissed the same claims—in the face of the same arguments—when they were asserted in <u>Troice</u>.

## POINT II.

## THE COMPLAINT IS TIME-BARRED

### A.  Plaintiffs' Claims Are Untimely Because Plaintiffs Knew or Should Have Known of Their Claims Well Over Four Years Ago

In addition to being barred by the attorney immunity doctrine, each of plaintiffs' claims has long been time-barred as a matter of Texas law.[10]  Although the limitations periods for plaintiffs' claims vary, the longest of them required plaintiffs to assert their claims within four years of when they knew or should have known of them.  See <u>S.V. v. R.V.</u>, 933 S.W.2d 1, 4

---

[10] As this Court has recognized, Texas limitations law applies to plaintiffs' claims "because . . . limitations are procedural rules."  Order at 10, <u>Janvey v. Adams & Reese, LLP</u>, No. 3:12-CV-0495-N (N.D. Tex. Sept. 11, 2013), ECF No. 58; <u>see also</u> <u>Robinson v. Crown Cork & Seal Co.</u>, 335 S.W.3d 126, 141 (Tex. 2010) (observing that Texas regards "[s]tatutes of limitations [as being] procedural" (quotation marks omitted)); <u>Woolley v. Clifford Chance Rogers & Wells, L.L.P.</u>, No. CIV.A. 3:01-CV-2185, 2004 WL 57215, at *3 (N.D. Tex. Jan. 5, 2004) (Fitzwater, J.) ("Several Texas appellate courts have considered which state's statutes of limitation should apply, and they have uniformly held that statutes of limitation are procedural and therefore Texas law controls.").

(Tex. 1996); <u>see also</u> Tex. Civ. Prac. & Rem. Code § 16.004 (four-year statute of limitations for aiding and abetting breach of fiduciary duty and aiding and abetting fraud); <u>id.</u> at § 16.003 (two-year statute of limitations for civil conspiracy); Tex. Rev. Civ. Stat. Ann. art. 581-33H(2)(a) (three-year statute of limitations for violations of the anti-fraud provisions of the TSA).  This action was commenced on April 28, 2016.  Thus, if plaintiffs knew or could have known of their claims prior to April 28, 2012, all of their claims are time-barred.

Plaintiffs undoubtedly knew or should have known of their claims much earlier than that date and cannot plausibly allege otherwise.  <u>Twombly</u>, 550 U.S. at 570.  Plaintiffs' claims, after all, are based on the very same conduct as the <u>Troice</u> action, which the same plaintiffs' counsel filed on behalf of the same putative class of investors in August 2009.  Indeed, plaintiff Phillip Wilkinson himself (represented, again, by the same attorneys as in this case and <u>Troice</u>) sued Proskauer based on the same conduct before April 28, 2012.  (Pls.' First Am. Pet., <u>Martin v. Proskauer Rose, LLP</u>, No. 3:12-cv-01809 (N.D. Tex. Jan. 27, 2012), ECF No. 1-5.)  The Receiver, too, sued Proskauer based on the same conduct prior to April 28, 2012.  (<u>See</u> Compl., <u>Janvey v. Proskauer Rose LLP</u>, No. 1:12-cv-00155 (D.D.C. Jan. 27, 2012), ECF No. 1.)  Under these circumstances, plaintiffs' conclusory allegation that they could not have discovered "the true nature" of their claims "until more recently" (Compl. ¶ 211) is frivolous and cannot be credited, even on a motion to dismiss.  <u>See</u> <u>Bush v. United States</u>, 823 F.2d 909, 910-11 (5th Cir. 1987) (per curiam) (affirming grant of motion to dismiss where plaintiff received records that should have made him aware of his claim more than two years before he filed his lawsuit); <u>Val-Com Acquisitions Trust v. Wells Fargo Bank, N.A.</u>, No. 3:10-CV-1331-L, 2011 WL 2517230, at *4 (N.D. Tex. June 23, 2011) (granting defendants' motion to dismiss on limitations grounds where the plaintiffs could have discovered their claims had reasonable diligence been exercised).

Whatever the outer bounds of the discovery rule, there is no doubt that plaintiffs (along with their

attorneys) had all the information they needed to assert their claims well over four years ago—as

*one of them in fact did*.

**B.      The <u>Troice</u> Action Did Not and Could Not Toll
          the Statutes of Limitation**

Acknowledging that their claims are time-barred absent some form of tolling, plaintiffs

allege that the <u>Troice</u> action tolled the statutes of limitation under <u>American Pipe & Construction

Co. v. Utah</u>, 414 U.S. 538 (1974), which generally serves to suspend federal limitations periods "as

to all asserted members of the class who would have been permitted to continue as a class action."

<u>Am. Pipe</u>, 414 U.S. at 554; <u>see</u> Compl. ¶¶ 3, 211.  That doctrine, however, does not apply here.

<u>American Pipe</u> does not "operate[] to toll [Texas's] state statute of limitations." <u>Bell v. Showa

Denko K.K.</u>, 899 S.W.2d 749, 757 (Tex. App.—Amarillo 1995, writ denied).[11]  Rather, under

Texas law, class action tolling only applies to a class action filed in Texas state court.  <u>See</u> <u>id.</u> at

758 (holding that allowing tolling based on claims filed in federal court "would be an extension not

warranted" by Texas law).  Accordingly, the Fifth Circuit has held that under Texas law, a "federal

class action filed in Texas or in any other State"—such as the <u>Troice</u> action—cannot toll Texas's

statutes of limitation even where the federal class action asserts claims arising under Texas law.

<u>Newby v. Enron Corp.</u>, 542 F.3d 463, 472 (5th Cir. 2008) (citing <u>Bell</u>, 899 S.W.2d at 757-58).

This prohibition on tolling, as the Fifth Circuit has explained, reflects a "deliberate policy choice"

by the Texas legislature that a class action prosecuted outside of Texas state court may not toll

Texas's statutes of limitations under any circumstances.  <u>See</u> <u>Vaught</u>, 107 F.3d at 1147 (observing

---

[11] Texas law governs plaintiffs' invocation of tolling based on the pendency of the <u>Troice</u> action.
<u>See</u> <u>Vaught v. Showa Denko K.K.</u>, 107 F.3d 1137, 1145 (5th Cir. 1997) ("[T]he Supreme Court has stated
that generally, for diversity actions, a federal court should apply not only state statutes of limitation but
also any accompanying tolling rules."); <u>Hensgens v. Deere & Co.</u>, 869 F.2d 879, 880 (5th Cir. 1989)
(same).

that a "federal class action filed in Texas or in any other State" would not "toll a Texas statute of limitations, regardless of the type of claims raised").

Thus, under controlling Fifth Circuit precedent, the <u>Troice</u> action did not—and could not—toll plaintiffs' deadline to assert their Texas law claims because <u>Troice</u> was a class action prosecuted outside of Texas state court.  See <u>Newby</u>, 542 F.3d at 468-69 (holding that class action asserting TSA claims did not toll subsequent action alleging claims under Texas law because the initial class action was prosecuted in federal court); <u>see</u> <u>In re Enron Corp. Sec.</u>, 465 F. Supp. 2d 687, 722 (S.D. Tex. 2006) (holding that putative class action asserting Texas law claims in the Southern District of Texas did not toll Texas law claims filed in the same court); <u>see also</u> <u>Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.</u>, 878 F. Supp. 2d 1009, 1016-17 (C.D. Cal. 2011) (observing that Texas law allows class action tolling "for cases filed within its own court system but ha[s] declined to apply it in other context" (citing <u>Vaught</u>, 107 F.3d at 1147)).[12]  Consequently, plaintiffs' untimely claims cannot be saved by virtue of the <u>Troice</u> action.

## C.      Plaintiffs Cannot File Successive Class Actions

Plaintiffs' class claims should be dismissed for the independent reason that the <u>American Pipe</u> doctrine does not toll the limitations period for asserting class claims.  The Fifth Circuit has held that members of a putative class action are not permitted to "piggyback one class action onto another and . . . toll the statute of limitations indefinitely."  <u>Salazar-Calderon v. Presidio Valley Farmers Ass'n</u>, 765 F.2d 1334, 1351 (5th Cir. 1985).  Thus, even if <u>American Pipe</u> tolling

---

[12] Plaintiffs cannot claim any surprise that <u>Troice</u> did not toll claims of absent class members. Indeed, plaintiffs' counsel filed an advisory in 2012 on behalf of Mr. Wilkinson, one of the plaintiffs in this case, explaining that he and dozens of other members of the putative class in <u>Troice</u> had filed protective, individual actions in Texas state court because they were "not willing to take [the] risk" that the <u>Troice</u> action would not "toll limitations for state law claims for absent class members."  (Advisory, <u>Troice v. Proskauer Rose LLP</u>, No. 3:09-cv-01600 (N.D. Tex. Jan. 4, 2012), ECF No. 101 (citing <u>Newby</u>, 542 F.3d at 471-72).)

could somehow save plaintiffs' stale causes of action, it would only potentially toll the statutes of

limitations for the claims of the named plaintiffs—***not*** the claims asserted on behalf of the

putative class.[13]  See Odle v. Wal-Mart Stores Inc., No. 3:11-cv-2954, 2012 WL 5292957, at *6-

7 (N.D. Tex. Oct. 15, 2012) (explaining that Fifth Circuit precedent precludes "former class

members [from filing] a subsequent class action suit, assuming the statute of limitations has

already run"), rev'd on other grounds, 747 F.3d 315 (5th Cir. 2014); Beavers v. Metro. Life Ins.

Co., No. G-07-00260, 2007 WL 3342540, at *6 (S.D. Tex. Nov. 8, 2007) (explaining that a class

action does not toll the "limitations on a claim for reassertion in a subsequent class action"

(citing Salazar-Calderon, 765 F.2d at 1351)), aff'd, 566 F.3d 436 (5th Cir. 2009).

Holding otherwise in this case would permit the very abuse of process that the Fifth

Circuit's prohibition of "piggybacking" is designed to prevent because it would permit vexatious

litigants to indefinitely bring class action after class action even when their claims are patently

devoid of merit.  See Salazar-Calderon, 765 F.2d at 1351 (explaining that "the tolling rule in class

actions is a generous one, inviting abuse" (quotation marks omitted)); Moore v. Lynaugh, No. 99-

20547, 2000 WL 1672670, at *2 (5th Cir. Oct. 12, 2000) ("This court has previously refused to

allow a putative class to 'piggyback' one class action upon a previous one in an effort to continue

to toll the limitations period . . . , reasoning that the practice would be too easily abused.").  This

case illustrates the point.  The Fifth Circuit dismissed the Troice action with prejudice because it

concluded that Proskauer is wholly immune from suits by non-clients as a matter of Texas law.

Troice, 816 F.3d at 350.  Yet, ***the same lawyers*** who represented the Troice plaintiffs filed this

case on behalf of an indistinguishable putative class under the auspice of testing "exceptions" to

that doctrine that the Fifth Circuit did not address because ***the same lawyers*** waived them.  If

---

[13] In all events, such claims would, of course, be frivolous in light of the Troice and Cantey
Hanger rulings.  See supra Point I.

plaintiffs and their counsel were permitted to assert class claims under these circumstances, they would be able to file class action claims against Proskauer in perpetuity so long as plaintiffs' counsel can continue to come up with new legal arguments, even baseless ones like those asserted here. That is not, and cannot be, the law. This conduct should not be permitted.

Contrary to plaintiffs' assertion in their complaint (see Compl. ¶ 3), the fact that Troice was dismissed before this Court ruled on plaintiffs' motion for class certification does not permit plaintiffs to circumvent the Fifth Circuit's prohibition on successive class actions. As courts in the Fifth Circuit applying Salazar-Calderon have recognized, the bar on "piggybacking" class actions applies no matter at what stage the prior class action was resolved. See Dickson v. Am. Airlines, 685 F. Supp. 2d 623, 629-30 (N.D. Tex. 2010) (finding successive class action was not entitled to tolling even though class certification was never adjudicated in first case); cf. In re Greyhound Sec. Litig., No. Civ. A. 3:95-CV-2103, 1997 WL 531317, at *1, *6 (N.D. Tex. Aug. 15, 1997) (denying plaintiff's motion to intervene as representative plaintiff after class action was dismissed for lack of standing).[14] Thus, the fact that the Fifth Circuit concluded that Troice was barred as a matter of law by attorney immunity before a court ruled on class certification does not permit plaintiffs to pursue their claims on a class basis.

---

[14] None of the contrary authorities identified in plaintiffs' complaint (see Compl. ¶ 3) reflect Fifth Circuit law. Indeed, the only decision plaintiffs cite from *any* court in the Fifth Circuit was vacated on appeal, see Smith v. Texaco, Inc., 281 F.3d 477, 478 (5th Cir. 2002), and the out-of-circuit cases on which plaintiffs rely do not comport with the Fifth Circuit's rule in Salazar-Calderon. (See Compl. ¶ 3.) That a split of authority may exist among the circuit courts does not permit plaintiffs to avoid the Fifth Circuit's prohibition on "piggybacking" class actions. In any event, the Fifth Circuit is not the only circuit to enforce a strict prohibition on "piggybacking" class actions. See, e.g., Forde v. Waterman S.S. Corp., No. 12-CV-3396, 2013 WL 5309453, at *1, *5 (S.D.N.Y. Sept. 18, 2013) (denying American Pipe tolling for a second class action after a virtually identical class action was dismissed on the merits before class certification was decided).

In sum, because Fifth Circuit precedent prohibits plaintiffs from piggybacking class claims onto a prior class action, plaintiffs' class claims must be stricken even if the Court determines—contrary to Texas law—that their individual claims are somehow timely.

## POINT III.

## PLAINTIFFS' TSA CLAIMS ARE BARRED BY THE STATUTES OF REPOSE

As set forth above, **all** of plaintiffs' claims are barred by attorney immunity and untimely. The TSA claims should be dismissed for the additional reason that they are barred by the applicable statutes of repose.

As this Court has explained, the TSA contains "statutes of repose [that] constitute absolute bars to suit." Troice, 2015 WL 1219522, at *6, rev'd on other grounds, 816 F.3d at 348-50. These "absolute bars" apply to plaintiffs' claims for aiding and abetting violations of the registration and anti-fraud provisions of the TSA. Indeed, this Court has held that those provisions impose strict three- and five-year repose periods:

> Claims based on sales of unregistered securities or sales by unregistered dealers may not be brought more than three years after the relevant sale. [Tex. Rev. Civ. Stat. Ann.] art. 581-33H(1)(a). Claims based on sales of securities through untruth or omission may not be brought more than five years after the relevant sale. Id. art. 581-33H(2)(b).

OSIC v. Greenberg Traurig, LLP, Civil Action No. 3:12-CV-04641-N, slip op. at 10 (N.D. Tex. Feb. 4, 2015) (Godbey, J.).[15] Here, because the last sale of any security by a Stanford entity took place in February 2009 at the latest (Compl. ¶ 60), the claims at issue—asserted more than seven years later, in April 2016—are barred by the TSA's statutes of repose.

_____

[15] That plaintiffs allege aiding-and-abetting liability rather than a primary violation of the TSA does not affect the analysis, or the application of the statutes of repose, because aiders and abettors are liable "to the same extent as if [they] were the seller, buyer, or issuer" under the TSA. See Tex. Rev. Civ. Stat. Ann. art. 571-33F.

The pendency of the Troice action did not and could not toll those repose periods because, as the Texas Supreme Court had explained, a statute of repose sets "a final deadline for filing suit that *is not subject to any exceptions*."[16]  Methodist Healthcare Sys. of San Antonio, Ltd., L.L.P. v. Rankin, 307 S.W.3d 283, 287 (Tex. 2010) (emphasis added); cf. Stein v. Regions Morgan Keegan Select High Income Fund, Inc., --- F.3d ----, 2016 WL 2909333, at *11-12 (6th Cir. May 19, 2016) (holding that class action tolling under American Pipe does not toll the statute of repose in Section 13 of the Securities Act); Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc., 721 F.3d 95, 109 (2d Cir. 2013) (same).  A contrary holding would frustrate Texas's policy of protecting defendants "from the burden of indefinite potential liability" through repose periods such as those set forth in the TSA.  Holubec v. Brandenberger, 111 S.W.3d 32, 37 (Tex. 2003); see Tex. Rev. Civ. Stat. Ann. art. 581-33H  cmt. to 1977 Amendment, p. 143 (West 2010) (explaining that the repose periods in the TSA were designed to "avoid the litigation of stale claims, . . . [and] bring finality to transactions").

## CONCLUSION

This most recent iteration of a third-party Stanford investor suit against Proskauer (the latest of fourteen filed by plaintiffs' counsel to date) has needlessly multiplied the proceedings without basis, thereby wasting the resources of the parties and the Court.  These suits should be brought to an end, and the complaint dismissed in its entirety with prejudice.

## REQUEST FOR ORAL ARGUMENT

Proskauer respectfully requests oral argument on its motion to dismiss the complaint.

---

[16] In addition, as discussed above, Texas does not permit class action tolling based on the pendency of a federal class action such as Troice.  See supra Point II.B.

Dated:  June 17, 2016

CARRINGTON, COLEMAN,             DAVIS POLK & WARDWELL LLP
SLOMAN & BLUMENTHAL, L.L.P.


By: /s/ Neil R. Burger                    By:   /s/ James P. Rouhandeh
   Neil R. Burger                         James P. Rouhandeh*
    Texas Bar No. 24036289                  New York Bar No. 2211837
    nburger@ccsb.com                        rouhandeh@davispolk.com
   Bruce W. Collins                        Daniel J. Schwartz*
    Texas Bar No. 04604700                  New York Bar No. 4159430
    bcollins@ccsb.com                       daniel.schwartz@davispolk.com
   901 Main Street, Suite 5500             Jonathan K. Chang*
   Dallas, Texas 75202                      New York Bar No. 4500484
   Telephone:  (214) 855-3000              jonathan.chang@davispolk.com
   Facsimile:  (214) 855-1333              450 Lexington Avenue
                      New York, New York 10017
                      Telephone:  (212) 450-4000
                      Facsimile:  (212) 701-5800
                      * admitted *pro hac vice*

                      *Attorneys for Defendant Proskauer Rose LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 17, 2016, I electronically transmitted the foregoing

document to the Clerk of the Court using the ECF system for filing.  A Notice of Electronic

Filing was transmitted to all ECF registrants.

/s/ James P. Rouhandeh__
James P. Rouhandeh