IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SANDRA DORRELL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-1152-N |
| | § | |
| PROSKAUER ROSE LLP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendant Proskauer Rose LLP's ("Proskauer") motion to dismiss [12].  Because Proskauer is entitled to attorney immunity, the Court grants the motion.

### I. ORIGINS OF THE PARTIES' DISPUTE

This action is one of many arising from the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control.  Plaintiffs are a group of investors who purchased fraudulent certificates of deposit issued by Stanford International Bank Limited.  They bring suit against Proskauer, a law firm Stanford retained to perform legal services.  They allege that Proskauer, through its former partner Thomas Sjoblom, conspired with Stanford to avoid regulation and detection, thereby extending the duration of Stanford's scheme.

The facts of Stanford's scheme are well established, *see, e.g., Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and are not recounted

in great depth here.  According to Plaintiffs, Defendant's involvement began years before Stanford's scheme collapsed.  Faced with a Securities and Exchange Commission ("SEC") inquiry in June 2005, Stanford hired Sjoblom, then a partner at Chadbourne & Park LLP ("Chadbourne"), to represent his entities in connection with the investigation.  After Sjoblom left Chadbourne to join Proskauer in August 2006, Stanford retained Proskaeur, led by Sjoblom, to serve as its new regulatory counsel.  Plaintiffs allege that Sjoblom entered into a conspiracy with certain principals of Stanford's entities, including Stanford himself, to obstruct the SEC investigation over the next two and a half years.  As part of the conspiracy, Plaintiffs allege that Sjoblom, among other things, made a number of false statements to the SEC designed to slow the investigation, played a role in the destruction of evidence prior to an impending SEC inspection, and assisted a principal of one of Stanford's entities in giving false testimony to lead the SEC astray.  Based on a respondeat superior theory of liability, Plaintiffs bring this putative class action lawsuit against Proskauer.

Previously, on August 27, 2009, Plaintiffs filed a similar lawsuit in this Court against Proskauer and others styled as *Troice v. Proskauer Rose LLP, et al.*, Case No. 3:09-CV-01600-N (the "*Troice* action").  After years of litigation, the Fifth Circuit on March 10, 2016 ordered the dismissal of the *Troice* action based on the doctrine of attorney immunity. Subsequently, on March 28, 2016, Plaintiffs filed the instant case claiming three exceptions to attorney immunity that the Fifth Circuit expressly declined to consider because Plaintiffs did not previously raise them before this Court in the *Troice* action.  Now before the Court is Proskauer's motion to dismiss on the grounds that (1) attorney immunity bars the lawsuit,

(2) statutes of limitation bar the lawsuit, and (3) statutes of repose bar the claims made under the Texas Securities Act ("TSA"), *see* TEX. REV. CIV. STAT. ANN. art. 581-33H.  Because the Court holds that attorney immunity bars the lawsuit, this Order does not address Proskauer's remaining arguments for dismissal.

## II. LEGAL STANDARD FOR MOTION TO DISMISS

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  However, a court may also consider documents outside of the pleadings if they fall within certain limited categories.  First, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).  Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding."  *Ferrer*, 484 F.3d at 780.  Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).  Finally, in deciding a Rule 12(b)(6) motion to dismiss, "a court may permissibly refer to matters of public record."  *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (citation omitted); *see also, e.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that "the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the [Food and Drug Administration], which were matters of public record directly relevant to the issue at hand").

### III. ATTORNEY IMMUNITY IN TEXAS

In its motion, Proskauer asserts that it is wholly immune from suit under Texas' attorney immunity doctrine. Plaintiffs contend, however, that three exceptions to attorney immunity preclude Proskauer's entitlement to such immunity in full or in part: (1) the litigation context exception, which allegedly renders the immunity inapplicable to attorney conduct that occurs outside of formal litigation; (2) the crime exception, which allegedly renders the immunity inapplicable to an attorney's criminal conduct; and (3) the TSA exception, which allegedly renders the immunity inapplicable to claims brought under the TSA. Because Texas law at present does not recognize any of these claimed exceptions, Proskauer is wholly immune from suit.

### A. Principles of Attorney Immunity

It is well-settled in Texas that a third party may not generally hold an attorney liable for conduct undertaken in the representation of a client. *See, e.g.*, *Alpert v. Crain, Caton & James, PC*, 178 S.W.3d 398, 406 (Tex. App. – Houston [1st Dist.] 2005, pet. denied). This general rule is designed to encourage "loyal, faithful, and aggressive representation by attorneys employed as advocates," which might be compromised if attorneys were subject to suit by third parties. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App. – Dallas 2000, pet. denied)). An attorney is thus "given latitude to 'pursue legal rights that he deems necessary and proper' precisely to avoid the inevitable conflict that would arise if he were 'forced constantly to balance his own potential exposure against his client's best interest.'" *Id.* at 483 (quoting

*Alpert*, 178 S.W.3d at 405).  The scope of the rule turns "on the type of conduct in which the attorney engages, rather than on whether the conduct was meritorious in the context of the underlying lawsuit." *Renfroe v. Jones & Associates*, 947 S.W.2d 285, 288 (Tex. App. – Fort Worth 1997, writ denied); *see also Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996) (noting that an attorney is generally immune from suit for conduct that "require[s] the office, professional training, skill, and authority of an attorney").  Hence, if an attorney conclusively establishes that his conduct was within the scope of his legal representation of a client, attorney immunity applies. *Cantey Hanger*, 467 S.W.3d at 481.

However, attorneys "are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Id.* at 482 (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, PC*, 2008 WL 746548, at \*9 (Tex. App. – Houston [1st Dist.] Mar. 20, 2008, pet. denied).  For example, an attorney who participates in a fraudulent business scheme with a client or assaults opposing counsel during trial is unprotected by attorney immunity, as such acts are "entirely foreign to the duties of an attorney." *Id.* (citing *Poole v. Houston & TC Ry. Co.*, 58 Tex. 134, 137 (1882) and *Bradt v. West*, 892 S.W.2d 56, 72 (Tex. App. – Houston [1st Dist.] 1994, writ denied)).

Although attorney immunity limits third party recovery against attorneys acting within the scope of their representative capacity, it does not grant attorneys the right to violate ethical rules. *Santiago v. Mackie Wolf Zientz & Mann, PC*, 2017 WL 944027, at \*3 (Tex. App. – Dallas Mar. 10, 2017, no pet.).  "[O]ther mechanisms are in place to discourage

and remedy [wrongful] conduct, such as sanctions, contempt, and attorney disciplinary proceedings." *Cantey Hanger*, 467 S.W.3d at 482; *see also Renfroe*, 947 S.W.2d at 287 ("If an attorney's conduct violates his professional responsibility, the remedy is public, not private.").

### B. Litigation Context Exception

Plaintiffs first argue that Proskauer is not entitled to attorney immunity because the immunity does not cover conduct that occurs outside of formal litigation.  Here, Sjoblom's conduct at issue occurred during an SEC investigation, a precursor to litigation.  The Court, however, holds that this claimed litigation context exception does not exist under Texas law and that, even if it does, Sjoblom's conduct occurred in a sufficiently litigation-like setting to nonetheless immunize Proskauer from liability.

### 1. The Litigation Context Exception Does Not Exist. – Recent state court decisions

indicate that the litigation context exception does not exist under Texas law.  Most prominently, the Supreme Court of Texas recently considered in *Cantey Hanger* whether attorney immunity protected a law firm accused of assisting a client fraudulently evade tax liability in a divorce proceeding.  467 S.W.3d at 480.  Though the law firm's conduct did not occur during formal litigation, the Court held that the conduct at issue – preparing a bill of sale to transfer personal property – was within the scope of the law firm's representation of its client, thereby entitling the law firm to attorney immunity.  *Id.* at 485.  In doing so, the Court noted:

> The majority of Texas cases addressing attorney immunity arise in the litigation context.  But that is not universally the case.  In *Campbell v.*

> *Mortgage Electronic Registration Systems, Inc.*, for example, the court of
> appeals held that attorneys hired to assist a mortgage beneficiary in the
> nonjudicial foreclosure of real property were immune from the borrowers' suit
> for wrongful foreclosure. []2012 WL 1839357, at *6 (Tex. App. – Austin May
> 18, 2012, pet. denied)[];  *see also* [*Reagan Nat. Advert. of Austin, Inc. v.*]
> *Hazen*, 2008 WL 2938823, at *8 (noting that "neither the case law, nor the
> [attorney-immunity] doctrine's underlying policy rationales, are limited to [the
> litigation] setting").   Because we conclude that Cantey Hanger's alleged
> conduct falls within the scope of its duties in representing its client in
> litigation, we need not consider the attorney-immunity doctrine's application
> to an attorney's conduct that is unrelated to litigation but nevertheless falls
> within the ambit of client representation and "requires the office, professional
> training, skill, and authority of an attorney."  *See Dixon Fin. Servs.*, 2008 WL
> 746548, at *7.

*Id.* at 482 n.6.  Thus, the Court held that the law firm was entitled to attorney immunity.  *Id.*

at 485.

Since *Cantey Hanger*, Texas courts of appeals have uniformly interpreted the state's

attorney immunity doctrine to apply even outside of formal litigation.  For example, in

*Santiago*, the Dallas Court of Appeals determined that a law firm was entitled to attorney

immunity for its conduct in representing a client in a pre-litigation foreclosure proceeding:

> To the extent appellants argue that attorney immunity applies only for
> attorneys involved in litigation, and [the law firm's] actions occurred before
> litigation began, *Cantey Hanger* states that "[t]he majority of Texas cases
> addressing attorney immunity arise in the litigation context [,] [b]ut that is not
> universally the case."   Opinions in other cases have noted that attorney
> immunity applies outside of the litigation context.   Even if we were to
> conclude that [the law firm's] actions occurred outside of the litigation context,
> the doctrine applied.

 2017 WL 944027, at *4 (internal citations omitted).  Similarly, in *Farkas v. Wells Fargo*

*Bank, NA*, the Austin Court of Appeals held that attorney immunity protected an attorney

sued for conduct undertaken while representing a client in a foreclosure proceeding:

> In another argument, Farkas asserts that attorney immunity applies only for attorneys involved in litigation, and [the attorney's] actions here were not conducted "in the course of any underlying litigation." . . .  We also note, however, as did the supreme court in *Cantey Hanger*, that "[t]he majority of Texas cases addressing attorney immunity arise in the litigation context[,] [b]ut that is not universally the case."  The supreme court cited to two cases, both of which are opinions of this Court, that indicate that attorney immunity applies outside of the litigation context.

2016 WL 7187476, at *8 (Tex. App. – Austin Dec. 8, 2016, no pet.) (internal citations omitted).  Most recently, in *Rogers v. Walker*, the Beaumont Court of Appeals determined that an attorney who represented a client outside of formal litigation in a probate proceeding was entitled to attorney immunity.  2017 WL 3298228, at *4 (Tex. App. – Beaumont Aug. 3, 2017, no pet.) ("Rogers presents no authority, nor are we aware of any, that supports his contention that the [nonlitigation] context of the present case falls outside the purview of *Cantey Hanger*.").

Although the Fifth Circuit has expressly declined to decide the issue, *see Kelly v. Nichamoff*, 868 F.3d 371, 376–77 (5th Cir. 2017), other federal courts interpreting Texas law on attorney immunity have consistently determined that attorney immunity may apply outside of formal litigation, *see LJH, Ltd. v. Jaffe*, 2017 WL 447572, at *3 (E.D. Tex. Feb. 2, 2017) ("In another argument, LJH asserts that attorney immunity does not apply in a non-litigation context, and the [law firm's] conduct occurred during a business transaction rather than in an adversarial proceeding.  The Court disagrees because that 'stance is not in line with Texas law.'" (internal citations omitted)); *see also Morse v. Codilis & Stawiarski, PC*, 2017 WL 2416332, at *2 (E.D. Tex. June 5, 2017) ("To the extent Plaintiff argues . . . that attorney immunity applies only to counsel involved in litigation, and not to counsel pursuing

foreclosure proceedings, Plaintiff's assertion is incorrect. . . .  Numerous opinions in other cases have found attorney immunity applicable outside of the litigation context, including specifically in foreclosure proceedings.") (internal citations omitted)).

In light of the case law on the issue, Plaintiffs are incorrect in asserting that Texas law recognizes a litigation context exception to attorney immunity.  The fact that Sjoblom's conduct at issue occurred outside of formal litigation presents no bar to Proskauer's entitlement to attorney immunity.

**2. Even if the Litigation Context Exception Exists, the Conduct at Issue Here Occurred During a Sufficiently Litigation-Like Setting. –** At least one court interpreting Texas' attorney immunity doctrine has considered whether the attorney conduct at issue occurred in an adversarial or litigation-like context, deeming conduct in such a context to be entitled to attorney immunity.  *See Kelly v. Rembach*, 2016 WL 8458093, at *3–4 (S.D. Tex. Sept. 21, 2016), *aff'd as modified sub nom. Kelly v. Nichamoff*, 868 F.3d 371 (5th Cir. 2017). Here, Sjoblom's conduct occurred in such a context.  Stanford specifically retained Sjoblom to represent his entities in the SEC's investigation, a precursor to formal litigation.  As part of this representation, Sjoblom corresponded with the SEC regarding legal issues, advised principals of Stanford's entities on how to respond to document requests, and represented a principal in a deposition – conduct typical of client representation in formal litigation. Moreover, Proskauer's engagement letter explicitly contemplated the matter going to formal litigation.  Though Sjoblom's conduct did not occur during formal litigation, the context was

sufficiently adversarial and litigation-like. Accordingly, Proskauer is entitled to attorney immunity even if the litigation context exception exists.

### C. Crime Exception

Plaintiffs next argue that Proskauer is not entitled to attorney immunity because the immunity does not cover an attorney's criminal conduct. Here, Plaintiffs allege that Sjoblom was engaged in various forms of criminal conduct, including conspiracy to obstruct justice, wire fraud, mail fraud, and aiding and abetting violations of the TSA. But the Court holds that this claimed crime exception does not exist under Texas law and that, even if it does, Sjoblom's conduct was within the scope of client representation and thus protected by attorney immunity.

*1. The Crime Exception Does Not Exist.* – Recent state court decisions indicate that the crime exception does not exist under Texas law; instead, the relevant inquiry is whether the attorney's conduct at issue was within the scope of client representation. In *Cantey Hanger*, the Supreme Court of Texas articulated that "attorneys are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" 467 S.W.3d at 482 (quoting *Dixon Fin. Servs.*, 2008 WL 746548, at *9); *see also Chapman Children's Trust v. Porter & Hedges, LLP*, 32 S.W.3d 429, 442 (Tex. App. – Houston [14th Dist.] 2000, pet. denied) (noting that "it is the kind of conduct that is controlling, and not whether that conduct is meritorious or sanctionable"). The *Santiago* Court further explained that "[i]f an attorney proves that his conduct is 'part of the discharge of his duties to his client,' immunity applies."

2017 WL 944027, at *3 (citing *Cantey Hanger*, 467 S.W.3d at 481). *Cantey Hanger* and its progeny thus establish that Texas' attorney immunity doctrine at present immunizes attorney conduct that is "within the scope of client representation," no matter if it is "wrongful or fraudulent." *Id.* (citing *Cantey Hanger*, 467 S.W.3d at 483–85).

The cases Plaintiffs cite as standing for the proposition that there exists a crime exception to attorney immunity have no bearing because they precede *Cantey Hanger*, which serves as the most current and authoritative articulation of the doctrine. Yet even in those cases, "the focus is on whether the offending conduct occurred in the context of the attorney's discharge of his duties to his client in an adversarial proceeding[,] . . . not on whether the conduct was 'criminal' in nature." *Sacks v. Hall*, 2014 WL 6602460, at *14 (Tex. App. – Houston [1st Dist.] Nov. 20, 2014, no pet.) (citing *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 475–76 (Tex. App. – Amarillo 2001, pet. denied) and *Bradt*, 892 S.W.2d at 72).

To boot, recent state court cases have applied attorney immunity to allegedly criminal conduct by attorneys. In *Cantey Hanger*, the Supreme Court of Texas held that a law firm accused of "evad[ing] tax liability," a criminal act, was entitled to attorney immunity. 467 S.W.3d at 480. In *Highland Capital Management, LP v. Looper Reed & McGraw, PC*, the Dallas Court of Appeals determined that a law firm was entitled to attorney immunity despite its allegedly "criminal, tortious, and malicious" conduct. 2016 WL 164528, at *6 (Tex. App. – Dallas Jan. 14, 2016, pet. denied) ("In this case, Highland characterized [the law firm's] actions as 'criminal, tortious, and malicious.' Nonetheless, the actions themselves . . . are the kinds of actions that are part of the discharge of an attorney's duties in representing a

party in hard-fought litigation."). In *Sacks*, the Houston Court of Appeals determined that an attorney accused of criminal disclosure of medical records, in violation of a federal statute, was entitled to attorney immunity. 2014 WL 6602460, at *14. And these decisions make sense, because the remedy for wrongful conduct by an attorney is "public, not private." *Renfroe*, 947 S.W.2d at 287; *see also Cantey Hanger*, 467 S.W.3d at 482 ("[O]ther mechanisms are in place to discourage and remedy [wrongful] conduct, such as sanctions, contempt, and attorney disciplinary proceedings."). Accordingly, the Court determines that the crime exception to attorney immunity does not exist under Texas law.

### *2. The Conduct at Issue Here was Sufficiently Within the Scope of Client Representation.* – Because the principal inquiry in determining whether an attorney's conduct is immunized is whether it was within the scope of client representation, the existence or nonexistence of a crime exception is simply irrelevant. Here, analyzing the same class' similar accusations against the same attorney in the *Troice* action, the Fifth Circuit already ruled that Sjoblom's conduct fell within the scope of client representation:

> Indeed, Plaintiffs do not dispute before this court that Sjoblom's alleged conduct was "the kind of conduct in which an attorney engages when discharging his duties to his client." [*Cantey Hanger*, 467 S.W.3d] at 482. Nor could they credibly do so. Plaintiffs alleged that, in representing Stanford Financial in the SEC's investigation, Sjoblom: sent a letter arguing, using legal authorities, that the SEC did not have jurisdiction; communicated with the SEC about its document requests and about Stanford Financial's credibility and legitimacy; stated that certain Stanford Financial executives would be more informative deponents than others; and represented a Stanford Financial executive during a deposition. *These are classic examples of an attorney's conduct in representing his client.* That some of it was allegedly wrongful, or that he allegedly carried out some of his responsibilities in a fraudulent manner, is no matter. [*Id.*] at 485 ("Byrd essentially complains that the manner in which [the law firm] carried out a specific responsibility assigned to it" was

> wrongful, but "[m]eritorious or not, the type of conduct alleged falls squarely within the scope of [the] representation."); *see also Alpert*, 178 S.W.3d at 406 ("The immunity focuses on the type of conduct, not on whether the conduct was meritorious in the context of the underlying lawsuit."). In other words, we do not conclude that Sjoblom's actions "d[id] not involve the provision of legal services," *Cantey Hanger*, 467 S.W.3d at 482, or that he engaged in acts that were "entirely foreign to the duties of an attorney," *Poole*[,]58 Tex. [at] 137.

*Troice v. Proskauer Rose, LLP*, 816 F.3d 341, 348–49 (5th Cir. 2016) (emphasis added). The Court is unable to discern any material difference between the allegations made regarding Sjoblom's conduct in the *Troice* complaint and those made in this complaint. In light of the Fifth Circuit's prior ruling and its own analysis of the allegations before it, the Court holds that Sjoblom's conduct as alleged in the instant case was within the scope of client representation. Accordingly, Proskauer is entitled to attorney immunity.

### D. TSA Exception

Plaintiffs finally argue that Proskauer is not entitled to attorney immunity because the immunity does not apply to claims brought under the TSA. Here, Plaintiffs have made a claim against Proskauer for aiding and abetting Stanford's violations of the registration and anti-fraud provisions of the TSA. The Court, however, holds that this claimed TSA exception does not exist under Texas law.

In their response to Proskauer's motion, Plaintiffs cite no case law that establishes that attorney immunity is inapplicable to TSA claims. Instead, Plaintiffs only cite a handful of Texas state court cases and one out-of-circuit case that allegedly stand for the proposition that other common law defenses are unavailable under the TSA. But the Fifth Circuit explained in *Troice* that "attorney immunity is properly characterized as a true immunity

from suit, not as a defense to liability." *Id.* at 346.  Consequently, the policy rationales undergirding these holdings are inapplicable to the instant case.  In the absence of clear authority establishing that attorney immunity is inapplicable to claims made under the TSA, Plaintiffs' policy arguments are unavailing and the default presumption must remain that the claimed exception does not exist.

### CONCLUSION

Because the litigation context, crime, and TSA exceptions to attorney immunity do not exist at present under Texas state law and Sjoblom's alleged conduct was within the scope of client representation, Proskauer is entitled to attorney immunity.  Accordingly, the Court grants Proskauer's motion to dismiss and dismisses Plaintiffs' claims against Proskauer in full.


Signed November 2, 2017.


David C. Godbey
United States District Judge